1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALI REZA SHAISI,

         Petitioner,

  v.

JAMES A. YATES,

         Respondent.

_____/

No. C 10-01597 CRB

**MEMORANDUM AND ORDER
DENYING PETITION FOR WRIT OF
HABEAS CORPUS**

Petitioner Ali Reza Shaisi has filed this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging his California state conviction of 15 criminal offenses arising from two distinct shoplifting incidents. Having considered the record and the relevant legal authority, the Court hereby DENIES Shaisi's Petition.

## I.    BACKGROUND

The California Court of Appeal summarized the facts of this case as follows:

**The Lunardi's Incident**

    Employees of Lunardi's Supermarket testified that on May 3, 2005, they observed a man later identified as defendant's father, Jahan Shaisi, pushing around a shopping cart full of large items with a zippered black bag in their midst. This is a technique commonly used by shoplifters to conceal their activities. A store employee notified Henry Carrillo, a head clerk, of the presence of a potential shoplifter. Jahan went through the aisle containing cold medication and quickly left the store.

    Carrillo, who was wearing a dark blue Lunardi's uniform, yelled for help and chased Jahan out of the store, closely followed by two other employees, also in uniform. The three of them caught Jahan in the parking lot and pulled him to the ground. Defendant, driving a white SUV, backed rapidly up to the affray, striking and spinning around one of the Lunardi's employees, and coming within inches of the others.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

Defendant got out of the vehicle brandishing what witnesses described as a knife.  From a distance of two or three feet, he motioned with the knife at the store employees, shouting at them.  Carrillo testified that he was close enough to tell that the object was a sharp knife, not a pen.  He described defendant as thrusting it towards the workers while shouting "hah hah." Carrillo ordered his fellow employees to back off.  They released Jahan and backed away about 10 feet.  Defendant and Jahan got into the SUV and drove away.

They left behind the black bag, which was found to contain several boxes of cold and sinus medication.  Employees found a corresponding empty gap on the cold medication shelf.  Police also found in the bag a court notice bearing Jahan's name and address.  They obtained warrants and arrested defendant and his father.  No knife was found.

Officer John Campos questioned defendant after the incident. Defendant told him that he had stopped to refuel his truck near Lunardi's and that while he was doing so his father had gone into Lunardi's for a drink.  After defendant finished filling the truck, he said, he had driven towards Lunardi's, where he saw several men on top of his father beating him.  He got out of his SUV and tried to help his father.  The men then backed away, and his father got in the SUV and they left.  After they left the scene, said defendant, his father told him the men thought he had stolen something.

Asked by Campos about the use of a knife, defendant insisted that he had only held a silver and black pen.  Campos also asked defendant if he knew that his father had a history of involvement in theft.  Defendant replied that he did.

Officer Campos testified that there is only one gas station located near Lunardi's, and it has its own convenience store that sells beverages.

On May 11, 2005, the prosecutor filed a complaint charging defendant with (1) second degree burglary; (2) two counts of petty theft with a prior; (3) three counts of assault with a deadly weapon with enhancements for personal use of a deadly weapon; (4) three counts of felony false imprisonment with personal use enhancements; (5) one count of accessory to burglary and petty theft; and (6) one enhancement for committing a felony while out of custody on bail.

**The Food Maxx Incident**

On September 5, 2005, security personnel at a Food Maxx store saw defendant, who was wearing a black and white jacket, taking Actifed cold medication off the shelves and placing it in his pockets.  Several employees waited in front of the store for defendant to leave.  When a loss prevention officer approached defendant to identify himself, defendant fled across the parking lot.  Five Food Maxx employees gave chase.  According to all five, defendant turned around and pointed a black handgun at them, whereupon they stopped their pursuit.  At least one witness thought that defendant seemed to be trying to fire the weapon.  One witness thought he heard a clacking noise coming from the gun.

Defendant fled across the street while store employees followed at a distance.  He went onto the roof of a building, where he appeared to be trying to load the weapon or get it to work.  Police arrived on the scene and saw defendant running on a freeway ramp, where they apprehended him.  He had neither his jacket nor any other items reported to have been in his possession. Police searched the area for at least an hour, and for another three hours the next day, but did not find a gun.  Nor did they find the missing store merchandise.  A store employee checked the shelf for Actifed cold medication and found that it was empty.

1        After his arrest defendant initially gave a fictitious name to police
2    officers.  Questioned by Officer John Marfia, he denied having a gun and said,
     initially, that he had pointed a cell phone at the store employees.  No cell phone
3    had been found on his person.  When the officer told him (falsely) that there
     was a video recording of him displaying a handgun, he said that the object was
4    a lighter shaped like a gun.  Although he claimed to have purchased it at a
     convenience store, he could not give the store's location.
5        On September 26, 2005, the prosecutor filed a second complaint,
     charging defendant with four counts of second-degree robbery, each with an
6    enhancement for personal use of a firearm; possession of a firearm by a felon;
     and stating a false name to a police officer.  The complaint was subsequently
7    amended to charge that defendant committed the false identification offense
     while out on bail on two other cases.

8    People v. Shaisi, No. H030526, 2008 WL 4561607, at *1-2 (Cal. Ct. App. Oct. 14, 2008).

9    The prosecutor moved to consolidate the two complaints at trial, which motion the court

10   granted over Shaisi's objection.  Id. at *3.

11       The jury found Shaisi guilty on all counts and sentenced him to 15 years, 8 months in

12   prison, plus 8 months in an unrelated case.  Id.  Shaisi timely appealed the verdict.  Id.  In an

13   exhaustive and well-reasoned opinion, the Court of Appeal affirmed the jury's verdict.  Id.

14   The California Supreme Court denied review of Shaisi's direct appeal on January 14, 2009.

15   See Answer (dkt. 7-1) at 7.  On July 8, 2009, the California Supreme Court summarily denied

16   Shaisi's direct state habeas petition.  Lodged Exhibits, Ex. 10.

17   **II.     STANDARD OF REVIEW**

18       This Court may entertain a petition for a writ of habeas corpus "in behalf of a person

19   in custody pursuant to the judgment of a State court only on the ground that he is in custody

20   in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

21       The Court may grant the writ with respect to any claim that the state court adjudicated

22   on the merits only if the state court's adjudication of the claim: "(1) resulted in a decision

23   that was contrary to, or involved an unreasonable application of, clearly established Federal

24   law, as determined by the Supreme Court of the United States; or (2) resulted in a decision

25   that was based on an unreasonable determination of the facts in light of the evidence

26   presented in the State court proceeding."  28 U.S.C. § 2254(d).

27       "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

28   court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

United States District Court
For the Northern District of California

1    law or if the state court decides a case differently than [the] Court has on a set of materially

2    indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the

3    'reasonable application clause,' a federal habeas court may grant the writ if the state court

4    identifies the correct governing legal principle from [the] Court's decisions but unreasonably

5    applies that principle to the facts of the prisoner's case." Id. at 413.

6        "[A] federal habeas court may not issue the writ simply because the court concludes in

7    its independent judgment that the relevant state-court decision applied clearly established law

8    erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

9    A federal habeas court making the "unreasonable application" inquiry should ask whether the

10   state court's application of clearly established federal law was "objectively unreasonable."

11   Id. at 409.

12       "Clearly established federal law" under 28 U.S.C. § 2254(d) refers only to the

13   holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court

14   decision. Williams, 529 U.S. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

15   While circuit law may act as "persuasive authority" for purposes of determining whether a

16   state court unreasonably applied Supreme Court precedent, only the Supreme Court's

17   holdings are binding on the state courts, and only those holdings need be "reasonably"

18   applied. Id.

19   **III.   DISCUSSION**

20       Shaisi now petitions this Court for habeas relief, claiming: (1) joinder of the two

21   complaints deprived him of a fair trial; (2) insufficient evidence existed to find beyond a

22   reasonable doubt that he used a firearm in the Food Maxx incident; (3) denial of Shaisi's

23   motion for new counsel deprived him of effective assistance of counsel; (4) imposition of a

24   ten-year sentencing enhancement for firearm use in the Food Maxx incident violated his right

25   to be free from cruel and unusual punishment; (5) California law punishing the taking of

26   property from store employees by force or fear as robbery is unconstitutionally vague and

27   violated Shaisi's right to equal protection; and (6) California law punishing petty theft as

28

robbery where the initial taking was non-violent is unconstitutionally vague.  See Pet. (dkt. 1) at p-4 to p-5.  The Court addresses each claim.

### A.    Improper Joinder

Shaisi claims that joinder of the two complaints violated his right to a fair trial.  See Pet. (dkt. 1) at m-1.  He claims that the two complaints "were strikingly dissimilar" and that "the evidence proffered by the prosecution to prove the [Lundardi's] incident was far weaker than the evidence presented to prove the [Food Maxx] incident."  Id. at m-2.  Essentially, Shaisi argues that "there is a very good probability" that the jury would not have inferred his intent to steal in the Lundardi's incident (as opposed to his stated intent to protect his father from attack), if not for evidence of his theft of cold medicine in the Food Maxx incident.  Id.

### 1.    Applicable Federal Law

"Improper joinder does not, in itself, violate the Constitution.  Misjoinder rises to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."  United States v. Lane, 474 U.S. 438, 446 n.8 (1986).  To show prejudice, a petitioner must demonstrate that the impermissible joinder "had substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Ambrahamson, 507 U.S. 619, 637 (1993) (citing Kotteakos v. United States, 328 U.S. 750, 776 (1946)); see also Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).[1]

The Ninth Circuit has recognized a "particularly great" risk of prejudice whenever joinder: (1) "allows evidence of other crimes to be introduced in a trial where the evidence

---

[1] Shaisi appears to dispute this standard in his Traverse.  See Traverse (dkt. 12-1) at 7.  He states that "[t]he standard of showing a lack of prejudice is that it is more likely than not that the jury would have convicted petitioner even if the two charges had been tried separately."  Id. (citing Fry v. Pliler, 551 U.S. 112, 121 (2007); O'Neal v. McAninch, 513 U.S. 432, 435 (1995)).  The Court finds no support for Shaisi's position in the case law, or in the cases to which Shaisi cites.  Fry held that federal habeas courts should apply the Brecht "substantial and injurious" standard "whether or not the state appellate court recognized the error and reviewed it for harmlessness . . . ." 551 U.S. at 121-22.  O'Neal held that when the question of prejudice "is so evenly balanced that [the court] feels [itself] in virtual equipoise as to the harmlessness of the error . . . [it] should treat the error, not as if it were harmless, but as if it affected the verdict . . . ."  513 U.S. at 434.  Fry referred to O'Neal tangentially, only to note that the O'Neal condition did not apply to it.  See Fry, 551 U.S. at 121 n.3.  Similarly, this Court does not find itself "in virtual equipoise," therefore it does not presume that the alleged error affected the verdict. Rather, it analyzes Shaisi's claim under Brecht's "substantial and injurious" standard.

United States District Court
For the Northern District of California

1    would otherwise be inadmissible," or (2) results in "joinder of a strong evidentiary case with

2    a weaker one."  Sandoval v. Calderon, 241 F.3d 765, 772 (2000).

3              **2.      Analysis**

4         The Court finds that the Court of Appeal did not unreasonably apply this standard in

5    determining that joinder of the two complaints did not deny Shaisi his right to a fair trial.[2]

6         In denying Shaisi's claim, the Court of Appeal asked the following questions: "(1)

7    would the evidence of the crimes be cross-admissible in separate trials; (2) are some of the

8    charges unusually likely to inflame the jury against the defendant; (3) has a weak case been

9    joined with a strong case or another weak case so that the total evidence on the joined

10   charges may alter the outcome of some or all of the charged offenses; and (4) is any one of

11   the charges a death penalty offense, or does joinder of the charges convert the matter into a

12   capital case."  Shaisi, 2008 WL 4561607, at *4.

13        The Court of Appeal correctly identified the governing legal principles and conducted

14   an equivalent, if not stricter, analysis than what federal law requires.[3]  The court found that

15   evidence from the Food Maxx incident might have been admissible in a separate trial of the

16   Lundardi's incident, however it did "not finally decide" the issue, because "none of the

17   additional indicators of undue prejudice was present."  Id. at *5-6.

18        Instead, noting that "the absence of cross-admissibility does not by itself demonstrate

19   prejudice . . . "  id. (citing People v. Mendoza, 24 Cal. 4th 130, 161 (2000)), see also

20   Featherstone v. Estelle, 948 F.2d 1497, 1503 (9th Cir. 1991) (same), the court addressed the

21   bulk of its analysis to Shaisi's "more colorable point" that joinder "unfairly bolstered" a

22

23        [2] Section 2254's "'contrary to' and 'unreasonable application' clauses have independent
     meaning."  Bell v. Cone, 535 U.S. 685, 694 (2002).  Shaisi's claims, however, fit better within the
24   "unreasonable application" framework, as he rarely, if ever, cites Supreme Court precedent as presenting
     "materially indistinguishable facts."  See Williams, 529 U.S. at 413.  The Court thus refers only to the
25   "unreasonable application" standard, unless otherwise noted.

26        [3] A state court does not need to cite federal law in its analysis.  Rather, its reasoning and results
     must agree with the relevant federal law in substance.  See Early v. Packer, 537 U.S. 3, 8 (2002) (per
27   curiam) ("Avoiding these pitfalls [of, for example, unreasonably applying federal law] does not require
     citation of our cases – indeed, it does not even require awareness of our cases, so long as neither the
28   reasoning nor the result of the state-court decision contradicts them," (emphasis in original)); Juan H.
     v. Allen, 408 F.3d 1262, 1275 n.12 (9th Cir. 2005) (same).

United States District Court
For the Northern District of California

1   weaker case with a stronger case, see Shaisi, 2008 WL 4561607, at *7-10.  Although the

2   court agreed that the Lundardi's evidence "was necessarily more circumstantial" than the

3   Food Maxx evidence, it found that "strong independent evidence" existed to support Shaisi's

4   conviction on the Lundardi's charges.  It noted: (a) the "implausibility" of Shaisi's own

5   account of the incident; (b) Shaisi's admitted knowledge of his father's prior history of theft;

6   (c) Shaisi's actions in promptly charging his father's pursuers, who were "conspicuously

7   dressed in store uniforms," and holding them "at bay just long enough to permit his father to

8   board the vehicle"; (d) Shaisi's failure to report the supposed assault; (e) that Shaisi's father

9   took a "hard left turn out of the Lundardi's exit" in the direction of Shaisi's vehicle, which

10  witnesses testify backed up toward Shaisi's father from a direction other than the gas station

11  where Shaisi claimed to be located; and (f) witness testimonies of Shaisi's actions consistent

12  with the inference that he acted as a getaway driver.  See Shaisi, 2008 WL 4561607, at *8-9.

13  "With or without joinder," the court concluded, "the jury was very likely to conclude that

14  [Shaisi] knew his father was entering Lundardi's in order to steal merchandise." Id. at 10.

15      The Court agrees based on its review of the record that this evidence militates against

16  a finding of prejudice.  The Court answers in the negative the underlying question that a

17  habeas court seeks to answer: "Do I, the judge, think that the error substantially influenced

18  the jury's decision?"  See O'Neal, 513 U.S. at 436.  Accordingly, the Court of Appeal's

19  reasoned conclusion that joinder "very likely" did not affect the verdict reflected neither an

20  unreasonable application of governing federal law nor an unreasonable determination of the

21  facts in light of the evidence produced in the state court proceedings.[4]

22

23      [4] This case differs materially from Bean v. Calderon, 163 F.3d 1073 (9th Cir. 1998), on which
    Shaisi heavily relies.  There, a jury convicted Bean (among other things) of two counts of first-degree

24  murder in connection with two distinct burglaries.  Id. at 1076.  Bean later challenged the trial court's
    joinder of the charges, claiming, as here, that joinder violated his due process rights.  Id. at 1077.  The

25  Ninth Circuit agreed, reversing Bean's conviction as to the weaker charge but not the stronger charge.
        Unlike this case, minimal evidence existed to convict Bean independently on the weaker charge

26  – only a single, "vigorously disputed" fingerprint, a strand of hair "consistent" with the victim's hair
    found on the object containing Bean's fingerprint, Bean's own inconsistent statements, and witness

27  statements that Bean was familiar with the victim's neighborhood and had been there on prior occasions.
    163 F.3d at 1085.  The Court agrees with the Court of Appeal here that "strong independent evidence"

28  existed to convict Shaisi on the Lundardi's charges.  See Shaisi, 2008 WL 4561607, at *8-10.
    Therefore, any disparity in this case between the strength of the complaints does not rise to a level of

United States District Court
For the Northern District of California

**B.      Insufficient Evidence**

Shaisi claims that "there was constitutionally insufficient evidence" to find that he used a gun in the Food Maxx incident, because witness descriptions of the "black, gun sized object in his hand" varied and because investigators never found a gun.  See Pet. (dkt. 1) at m-4 to m-5.

### 1.      Applicable Federal Law

Jackson v. Virginia, 443 U.S. 307, 319 (1979), provides the relevant legal standard in assessing an insufficiency-of-evidence claim.  A habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. (emphasis in original).  The court may grant habeas relief if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Id. at 324.

Circumstantial evidence and inferences drawn from that evidence may suffice to sustain a conviction.  Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).  If confronted by a record that supports conflicting inferences, the court "must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  Jackson, 443 U.S. at 326.

Under § 2254, a federal habeas court applies Jackson with an additional layer of deference: the court must ask whether the state court decision reflected an objectively unreasonable application of Jackson to the facts of the case.  See Juan H., F.3d at 1274-75.

### 2.      Analysis

The Court finds that the California Supreme Court did not unreasonably apply federal law in rejecting Shaisi's insufficiency-of-evidence claim.[5]  "Where a state court's decision is

constitutional infirmity, as it did in Bean.

[5]   The Court notes the possibility that Shaisi did not "fairly present" this claim to the Court of Appeal, as he did not reference "specific federal constitutional guarantees" in its regard.  See Gray v. Netherland, 518 U.S. 152, 162-63 (1996).

However, Shaisi presented this claim as a federal claim in his direct habeas petition to the California Supreme Court, see Shaisi State Petition, S170486 (Feb. 13, 2009), thereby "alert[ing] [the] court to the federal nature of the claim," Baldwin v. Reese, 541 U.S. 27, 29 (2004).  Although the court

United States District Court
For the Northern District of California

1   unaccompanied by an explanation, the habeas petitioner's burden still must be met by

2   showing there was no reasonable basis for the state court to deny relief." Richter, 131 S. Ct.

3   at 784.  Shaisi has not overcome this burden.

4          California law provides a sentencing enhancement as to "any person who, in the

5   commission of a [robbery], personally uses a firearm . . . ."  Cal. Penal Code § 12022.53(b).

6   The Code defines "firearm" as "any device, designed to be used as a weapon, from which is

7   expelled through a barrel, a projectile by the force of any explosion or other form of

8   combustion."  Id. § 12001(b).  The Court agrees with Shaisi that "firearm," as defined above,

9   does not include air guns or toy guns.  See Pet. (dkt. 1) at m-4 (citing People v. Vasquez, 7

10  Cal. App. 4th 763, 764-65 (1992) (air guns); People v. Reid, 133 Cal. App. 3d 354, 367

11  (1982) (toy guns)).  But, sufficient evidence existed under Jackson for a rational trier of fact

12  to have found beyond a reasonable doubt that Shaisi displayed an actual firearm.

13         The Court of Appeal's recitation of the facts supporting Shaisi's gun enhancement,

14  and this Court's review of the record, provide more than "a reasonable basis for the

15  [California Supreme Court] to [have] den[ied] relief."  See Richter, 131 S. Ct. at 784.  Five

16  witnesses testified that Shaisi "pointed a black handgun at them."  Shaisi, 2008 WL 4561607,

17  at *14.  While acknowledging that Shaisi displayed the object only briefly, and that the

18  witnesses' statements varied as to the specific type and caliber of the weapon, the court noted

19  that "[a]ll five witnesses [still] described a weapon that did not vary in its observable details

20  – a black semiautomatic with an overall length of eight or nine inches.  [Shaisi] emphasize[d]

21  uncertainties surrounding the caliber of the weapon . . . but nothing before the jury suggested

22  that this distinction had any material bearing on the accuracy of the witnesses' testimony."

23  Id. at 15.  Although "no gun was ever found," Pet. (dkt. 1) at m-4, investigators did not find

24  a replica gun either, which could have led the jury to wonder "quite reasonably . . . why, if

25

26  summarily denied the petition, see Lodged Exhibits, Ex. 10, "[w]hen a federal claim has been presented
    to a state court and the state court has denied relief, it may be presumed that the state court adjudicated
27  the claim on the merits in the absence of any indication or state-law procedural principles to the
    contrary."  Harrington v. Richter, -- U.S. --, 131 S. Ct. 770, 784-85 (2011).

28         As Shaisi "fairly presented" the claim to the California Supreme Court, he exhausted it.  See
    Picard v. Connor, 404 U.S. 270, 275 (1971).  The Court therefore considers the California Supreme
    Court's opinion operative as to this claim.

**United States District Court**
For the Northern District of California

1  the object used by [Shaisi] in the crime was not a real firearm, he did not hang onto it, or at

2  least describe its provenance, so that he could prove he had not possessed a firearm."  Shaisi,

3  2008 WL 4561607, at *16.

4      The Court agrees with the Court of Appeal that the object's identity "was for the jury

5  to evaluate, and given the absence of any supportive evidence the jury was entitled to dismiss

6  [Shaisi's claims] as sheer speculation."  Id. at 16.  A habeas court must presume that the trier

7  of fact resolved any conflicting inferences in favor of the prosecution.  Jackson, 443 U.S. at

8  326.  Resolving any conflicting inferences in the government's favor, the California Supreme

9  Court had more than a reasonable basis to conclude that a reasonable juror might have

10  dismissed Shaisi's protestations and thus found, beyond a reasonable doubt, that Shaisi

11  brandished an actual firearm.

12      **C.**    **Denial of <u>Marsden</u> Motion and Ineffective Assistance of Counsel**

13      Shaisi next claims that the trial court's "failure to grant [his] motion for new counsel

14  denied him his right to due process of law and the effective assistance of counsel under the

15  Sixth and Fourteenth Amendments to the United States Constitution."  Pet. (dkt. 1) at m-5.

16  He claims five bases for relief: "(1) [his attorney's] failure to address possible consolidation

17  of the cases; (2) irreconcilable difference with counsel about the circumstances of the case

18  and whether [Shaisi] should even proceed to trial; (3) failure to file a motion about the

19  admission of the drug charge at trial; (4) failure to move to exclude [Shaisi's] statement as

20  involuntary; and (5) failure to timely address the issue of a speedy trial."  Id. at m-5 to m-6.

21      On the face of his petition, Shaisi challenges the trial court's denial of his motion for

22  substitute counsel – a so-called "<u>Marsden</u> motion" pursuant to <u>People v. Marsden</u>, 2 Cal. 3d

23  118 (1970).  <u>See</u> Pet. (dkt. 1) at m-5.  Indeed, the Court of Appeal treated Shaisi's claim as

24  an appeal of the trial court's <u>Marsden</u> decision, not "inneffective assistance [of counsel] as a

25  separate point on appeal."  Shaisi, 2008 WL 4561607, at *29.

26      However, Shaisi's habeas claims to the California Supreme Court and to this Court

27  are broader and arguably encompass a separate claim for ineffective assistance of counsel in

28

general.[6]  Although Shaisi does not so distinguish his claims, the Court considers them separately.  For related reasons, both claims fail.

### 1.   Denial of <u>Marsden</u> Motion

#### a.   Applicable Federal Law

Denial of a motion for substitute counsel may implicate the Sixth Amendment right to counsel.  <u>See</u> <u>Schell v. Witek</u>, 218 F.3d 1017, 1023 (9th Cir. 2000) (en banc).  Accordingly, the trial court must conduct an "appropriate inquiry into the grounds for such a motion" and "resolve[] [it] on the merits before the case goes forward."  <u>Id.</u> at 1025.

Not every conflict with counsel entitles a criminal defendant to new counsel.  "The right to counsel does not guarantee 'a right to counsel with whom the accused has a 'meaningful attorney-client relationship.'"  <u>Daniels v. Woodford</u>, 428 F.3d 1181, 1197 (9th Cir. 2005) (citing <u>Morris v. Slappy</u>, 461 U.S. 1, 3-4 (1983)).  The ultimate inquiry in a federal habeas proceeding is whether the petitioner's Sixth Amendment right to counsel was violated.  <u>Schell</u>, 218 F.3d at 1025-26.  That is, the habeas court considers whether the trial court's denial of a petitioner's substitution motion "actually violated [his] constitutional rights in that the conflict between [him] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment."  <u>Id.</u> at 1026.  The Court, therefore, must assess "the nature and extent of the conflict and whether that conflict deprived the defendant of representation guaranteed by the Sixth Amendment."  <u>Daniels</u>, 428 F.3d at 1197 (quoting <u>Schell</u>, 218 F.3d at 1027).

#### b.   Analysis

Applying these factors, the Court finds no constitutional error in the denial of Shaisi's <u>Marsden</u> motion.  At the <u>Marsden</u> hearing, Shaisi made four complaints: his counsel (1) was

---

[6]  Both claims – ineffective assistance of trial counsel and improper denial of a motion for substitute counsel – implicate the Sixth Amendment's right to effective assistance of counsel, not the Fourteenth Amendment.  Shaisi only mentions the Fourteenth Amendment once and cites no case law supporting its application.  Contrary to Shaisi's unsubstantiated statement that the trial court's "failure to grant [his] motion for new counsel denied him his right to due process of law" under the Fourteenth Amendment, Pet. (dkt. 1) at m-5, the Court treats Shaisi's claims as Sixth Amendment challenges.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

confusing his case with "a case that ha[d] to do with [his] father"; (2) thought Shaisi was not

innocent and was trying to convince him to plead guilty instead of going to trial; (3) told

Shaisi that his previous "drug charges will not look good because [Shaisi] went to the

medicine section of the store" in the Food Maxx incident; and (4) failed to protect Shaisi's

speedy trial rights.  See Lodged Exhibits, Ex. 3 ("Reporter's Transcript of Marsden

Hearing") at 9-12.

The trial court appropriately inquired into these claims and rejected them on the

merits.  Id. at 28-31.  On reviewing the record, this Court agrees with the trial court and the

Court of Appeal's affirmation of the Marsden ruling.  Shaisi's complaints rested on

misunderstandings of law,[7] differences in trial strategy,[8] and non-prejudicial

miscommunication or error.[9]  The record does not indicate a "complete breakdown of

---

[7] As to counsel's alleged confusion of Shaisi's case with his father's case, the Court of Appeal wrote: "This pointed to no deficiency in representation, since it apparently rested on a misapprehension by defendant of the substantive law underlying the Lunardi's charges.  He apparently viewed that matter as 'my father's case,' and could not understand why he was implicated in it since, as he later emphasized, he 'did not take anything from the store.'  Defendant may have been referring, in addition or instead, to an earlier conviction of his father's, which – as counsel had explained to him – would probably be introduced to impeach his father if the latter were to testify."  See Shaisi, 2008 WL 4561607, at * 29.

[8] As to Shaisi's second and third claims, counsel claimed to have been "tell[ing] [Shaisi] what he need[ed] to hear based on the law, based on the facts of the case."  Trans. of Marsden Hearing at 19.  Thus, he presented to Shaisi unfavorable facts.  The record reflects, for example, that counsel discussed Shaisi's drug charge with him in order to inform him of evidence that could be admitted, and its possible consequences.  See Shaisi, 2008 WL 4561607, at * 29.  The trial court reasonably "believe[d] counsel's representations to the Court regarding these series of events."  Trans. of Marsden Hearing at 28; see also Weaver v. Palmateer, 455 F.3d 958, 963 n.6 (9th Cir. 2006) (federal habeas court must be "particularly deferential" to trial court's credibility determinations).  The court thus reasonably concluded that counsel "act[ed] in good faith to fully advise and counsel his client on the facts and circumstances at any trial of this matter."  Trans. of Marsden Hearing at 28-29.  These complaints appear to this Court as differences in trial strategy, which "alone generally [do] not constitute a denial of effective assistance of counsel."  United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981) (citations omitted); see also Stenson v. Lambert, 504 F.3d 873, 886 (9th Cir. 2007).

[9] Explaining the delay in withdrawing Shaisi's time waiver, Shaisi's counsel acknowledged a miscommunication.  See Trans. of Marsden Hearing at 24-25.  However, as the Court of Appeal noted, "the withdrawal of defendant's waiver had been improperly delayed for two weeks, but that this had no effect on defendant because the case was going to trial forthwith, comfortably within the 60 days that would have begun to run upon the withdrawal."  Shaisi, 2008 WL 4561609, at *30.

The trial court and Court of Appeal also considered Shaisi's statement that police beat him and coerced certain testimony.  See infra note 10 and text accompanying note 10.  The courts determined that counsel reasonably did not pursue the claim, because Shaisi did not suggest a connection between his allegedly involuntary statements and any statements actually admitted into evidence.  Cf. Knowles

1    communication" sufficient to constitute a constructive denial of counsel, see Stenson, 504

2    F.3d at 886, and, in any case, Shaisi does not argue that this friction prejudiced his defense or

3    cite a single case suggesting that these circumstances violated his Sixth Amendment right to

4    effective counsel.

5         The trial court's denial of Shaisi's Marsden motion did not constitute constitutional

6    error.  The Court of Appeal did not unreasonably apply federal law, or unreasonably

7    determine the facts of the case in light of the evidence presented in the State court

8    proceeding, in affirming the trial court's decision.

9                          **2.     Ineffective Assistance of Counsel**

10                         **a.     Applicable Federal Law**

11        Strickland v. Washington, 466 U.S. 668 (1984), provides the standard for effective

12   assistance of counsel.  To prevail on a claim of ineffective assistance of counsel, a habeas

13   petitioner must demonstrate (1) that his counsel's representation fell below an objective

14   standard of reasonableness and (2) that the deficient performance prejudiced the petitioner's

15   defense.  See Strickland, 466 U.S. at 687-89.  In reviewing the counsel's performance, courts

16   "must be highly deferential" and should make "every effort to eliminate the distorting effects

17   of hindsight."  Id. at 689.

18        The Supreme Court recently revisited Strickland in Harrington v. Richter, in which

19   the Court stressed Strickland's highly deferential character.  See Richter, -- U.S. --, 131 S.

20   Ct. 770, 787-88 (2011).  When coupled with the "unreasonable application" requirements

21   under §2254(d), "[t]he pivotal question is whether the state court's application of the

22   Strickland standard was unreasonable," which "is different from asking whether defense

23   counsel's performance fell below Strickland's standard."  Richter, 131 S. Ct. at 785.  When

24   the "highly deferential" standards provided under Strickland and § 2254(d) "apply in tandem,

25   review is doubly so."  Id. at 788 (citations and quotation marks omitted).

26

27   _____

28   v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1422 (2009) ("The law does not require counsel to raise
     every available nonfrivolous defense.").

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   When applying § 2254(d), then, a federal habeas court should not ask "whether

2   counsel's actions were reasonable," rather "whether there is any reasonable argument that

3   counsel satisfied Strickland's deferential standard." Id. "A state court's determination that a

4   claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

5   disagree' on the correctness of the state court's decision." Id. at 786.

6                                   **b.      Analysis**

7       To the extent that Shaisi has presented a separate ineffective assistance claim in his

8   federal habeas petition, he exhausted the claim before the California Supreme Court.  Shaisi,

9   therefore, must show that "there was no reasonable basis for the state court to deny relief."

10  Richter, 131 S. Ct. at 784.

11      In addition to the issues raised in his Marsden claim, Shaisi cites specific instances in

12  which his counsel provided inadequate assistance: his failure to (1) adequately address

13  consolidation of Shaisi's cases, (2) oppose admission of Shaisi's drug charge, (3) move to

14  exlude Shaisi's statements to police as involuntary, and (4) address the issue of a speedy trial.

15  See Pet. (dkt. 1) at m-6.

16      Although the Court expresses doubt as to whether Shaisi has met the high threshold

17  for demonstrating that counsel's performance fell below an objective standard of

18  reasonableness, see Richter, 131 S. Ct. at 785, the Court's previous analysis makes its

19  consideration of the first Strickland prong unnecessary: Shaisi has not demonstrated

20  prejudice as to any of his ineffective assistance claims.  See Strickland, 466 U.S. at 697 ("If it

21  is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . .

22  . that course should be followed.");  Williams v. Calderon, 52 F.3d 1465, 1470 n.3 (9th Cir.

23  1995) ("applaud[ing]" district court's decision to decline consideration of Strickland's

24  reasonableness prong upon its conclusion that petitioner could not establish prejudice).

25      Consideration of the record demonstrates that none of these alleged inadequacies

26  prejudiced Shaisi's defense.  As to consolidation, and discussed above, strong evidence

27  existed to convict Shaisi on the "weaker" Lunardi's charge.  Likewise, as the Court of

28  Appeal noted, "counsel successfully opposed prosecution efforts to bring [Shaisi's] drug use

into the case," Shaisi, 2008 WL 4561607, at *29, and Shaisi proceeded to trial no later than he would have otherwise had counsel withdrawn the time waiver when Shaisi first requested it, id. at 30. Although the Court notes with concern Shaisi's allegations that police beat him and called him ethnic slurs after his arrest, see Trans. of Marsden Hearing at 26-27, Shaisi provided no evidence, and the record does not contain any indication, that the allegedly coerced statements were admitted into evidence.[10]

A reasonable basis exists for the California Supreme Court to have determined that these alleged errors neither "undermine[d] confidence in the outcome" of the proceeding, see Strickland, 466 U.S. at 694, nor "render[ed] the result of the trial unreliable or the proceeding fundamentally unfair," see United States v. Day, 285 F.3d 1167, 1170 (9th Cir. 2002) (citing Lockhart v. Fretwell, 506 U.S. 364, 372 (1993)). The California Supreme Court was not unreasonable, then, in concluding that Shaisi's claim did not satisfy Strickland's prejudice prong. Accordingly, the claim does not warrant habeas relief.

### D. Cruel and unusual punishment

Shaisi claims that the trial court's imposition of "a ten-year sentencing enhancement provision pursuant to California Penal Code section 12022.53(b) for the personal use of a firearm in the commission of [a] second degree robbery . . . was a violation of [Shaisi's] federal and state right against cruel and unusual punishment." Pet. (dkt. 1) at m-9. He claims that the enhancement is "excessive in relation to this particular offense and this particular offender." Id. at m-10. The Court finds that the Court of Appeal did not unreasonably apply federal law in its consideration and rejection of this claim.

---

[10] As the Court of Appeal notes: "There is no evidence . . . that the alleged beating had any connection at all with the statements that were admitted into evidence. The paradigmatic coerced statement is a confession or facially incriminating admission. No such statement was offered in evidence here. The statements placed in evidence possessed incriminating potential due not to their content but to their implausibility, which in turn supported an inference that defendant fabricated them in an attempt to exculpate himself. While it is conceivable that they were coerced in the sense that defendant was compelled by duress to relinquish his right to remain silent, the record contains no suggestion, let alone evidence, to that effect." Shaisi, 2008 WL 4561607, at *30. "[N]othing actually said by [Shaisi] suggested any connection between the alleged beating and his statements to the police." Id. at *31.

United States District Court
For the Northern District of California

### 1.     Applicable Federal Law

"The Eight Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" Ewing v. California, 538 U.S. 11, 20 (2003) (citing Harmelin v. Michigan, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring in part and concurring in judgment)).  "The only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is [this] gross disproportionality pinciple, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Lockyer v. Andrade, 538 U.S. 63, 72 (2003) (citing Harmelin, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in judgment)).

The Supreme Court has distilled three "objective criteria" to guide a court's proportionality analysis: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Solem v. Helm, 463 U.S. 277, 292 (1983).  In applying these criteria, a court should bear in mind "four 'common principles' of proportionality review: (i) the primacy of the legislature in determining appropriate punishment; (ii) the variety of legitimate penological schemes; (iii) the inevitably divergent theories of sentencing in our system of federalism; and (iv) the use of objective factors to guide proportionality review." Ramirez v. Castro, 365 F.3d 755, 765 (9th Cir. 2004) (citing Harmelin, 501 U.S. at 999-1001 (Kennedy, J., concurring in part and concurring in judgment)).

Again, under § 2254, a federal habeas court may not grant habeas relief simply because it disagrees with a state court's application of these principles.  "Rather, that application must be objectively unreasonable." Lockyer, 538 U.S. at 76 (citations omitted).

### 2.     Analysis

The California Court of Appeal reasonably applied this standard in rejecting Shaisi's claim.  Analyzing an analogous set of three "objective criteria" under California law, the

United States District Court
For the Northern District of California

court focused primarily on the nature of Shaisi's offense.[11]  See Shaisi, 2008 WL 4561607, at *21-22.  The court noted witness allegations that Shaisi "not only produced a handgun, but pointed it at his pursuers and tried to fire it."  Shaisi, 2008 WL 4561607, at *22.  Had the gun fired, Shaisi could have received a 20-year enhancement.  Id.  Witnesses also testified that they saw Shaisi later attempting to "restore the weapon to operability," suggesting "the continuing presence of a willingness to inflict severe injury, if not death."  Id.  Thus, the evidence suggests that the "fortuity of [Shaisi's] apparent inability to operate the gun" may have saved him from a more severe outcome that he appeared willing to risk.

The court also considered Shaisi's assertions that he displayed the weapon only briefly, which he asserts again here.  See id.; Pet. (dkt. 1) at m-9.  "But this hardly negates the relatively serious characteristics of the offense, which arise not from [Shaisi's] showing the gun but from his pointing it at pursuers with the apparent willingness to use it, and at any rate with an apparent ineptitude that suggests a grave risk of lethal mishap."  Shaisi, 2008 WL 4561607, at *22.  Indeed, however "unclear" the contours of the Supreme Court's proportionality jurisprudence, the violent nature of Shaisi's offense places it more squarely within the line of cases upholding severe punishments against Eighth Amendment challenge. Compare Ramirez, 365 F.3d at 767-70 (repeatedly emphasizing nonviolent nature of defendant's petty theft in finding "extremely rare" violation of Eight Amendment), with Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004) (upholding sentence of twenty-five years to life under California Three Strikes Law for analogous petty theft, distinguishing Ramirez solely on the basis that Ramirez's convicted offense, and prior offenses, "involved the threat of violence").

---

[11] The court focused on the nature of the offense because, it concluded, Shaisi's "entire argument hinge[d] on the first [objective criterion] . . . ."  See Shaisi, 2008 WL 4561607, at *21 (Shaisi "ma[de] no attempt to show that the second or third factors [i.e., the comparative analyses] favored a finding here of constitutionally impermissible disproportionality.").

Furthermore, as the court noted, and as discussed below, the nature of the offense cut strongly against a finding of unconstitutionally severe punishment.  See id. at *21; cf. Ramirez, 365 F.3d at 766 (noting that, in Ewing, the Supreme Court, "[h]aving . . . ruled that Ewing's sentence did not raise an inference of gross disproportionality, . . . did not perform a comparative intrajurisdictional or interjurisdictional analysis under Solem").

**United States District Court**
For the Northern District of California

Although a ten-year enhancement for firearm use imposes a severe penalty, a court must bear in mind the many "divergent theories of sentencing in our system of federalism" and the legislative deference that <u>Harmelin</u> encourages.  <u>See</u> 501 U.S. at 999-1001 (Kennedy, J., concurring in part and concurring in judgment).  As the Court of Appeal stated, the gun enhancement "reflects the people's sentiment that the use of firearms in the commission of serious felony offenses will not be tolerated because of the incredible threat to public safety and harm that it poses."  <u>Shaisi</u>, 2008 WL 4561607, at *20 (citations omitted).

In light of the risk of Shaisi's firearm use, and the California legislature's choice to punish firearm use so severely, the Court concludes, like the Court of Appeal, that this case is not one of the "exceedingly rare" cases that violate the Eighth Amendment's narrow proportionality principle.  The Court of Appeal did not unreasonably apply federal law, or unreasonably determine the facts of the case in light of the evidence presented in the State court proceeding, in determining as much.

**E.      Unconstitutional Vagueness Based on Victim's Status as Employee**

Shaisi challenges California Penal Code § 211, which defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  Cal. Penal Code § 211 (2011).  As Shaisi only applied force or fear when fleeing the FoodMaxx, he claims that he "would not have committed a robbery if the people who happened to chase him were not employees of the store from which he had allegedly stolen the items."  Pet. (dkt. 1) at m-10.  Thus, he argues, the robbery statute – exposing Shaisi to liability "solely because he was chased by store employees" – suffers unconstitutional vagueness.  <u>Id.</u>

**1.      Applicable Federal Law**

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983) (citing <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 108-09 (1972), on which Shaisi relies).  In a vagueness challenge, a

court must look to the plain language of the statute, as well as to state courts' interpretations of it.  Nunez by Nunez v. City of San Diego, 114 F.3d 935, 941-42 (9th Cir. 1997) (citing Kolender, 461 U.S. at 355 n.4).  A statute will meet the "certainty required by the Constitution if its language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices."  Panther v. Hames, 991 F.2d 576, 578 (9th Cir. 1993) (citations omitted).

### 2.     Analysis

Although, on its face, Shaisi's claim implicates the void-for-vagueness doctrine, it does not cite the statutory text.  Shaisi quotes the trial court's jury instruction instead:

> A store employee may be robbed if property of the store is taken, even though he or she does not own the property and was not, at that moment, in immediate physical control of the property.  If the facts show that the employee was a representative of the owner of the property and the employee expressly or implicitly had authority over the property, then that employee may be robbed if property of the store is taken by force or fear.

Lodged Exhibits, Ex. 1 ("Clerk's Transcript") at 294; see also CAL-CRIM 1600 (2008).  Shaisi seems to argue that the instruction construes the robbery statute too broadly.  See Pet. (dkt. 1) at m-10 ("Reading the robbery statute this broadly creates an unconstitutional vagueness in the statute.").  However, Shaisi did not object to the jury instruction (and does not now), and he has framed his argument as a vagueness challenge.  The Court, then, understands Shaisi's argument to apply to the statute: California Penal Code § 211 allows unconstitutional uncertainty (as embodied in the instruction), because its applicability depends on the accident of a victim's identity – in other words, the accident of whether a victim possesses the taken property or not.

Shaisi suggests that this allegedly impermissible uncertainty results from vagueness in the statutory text, but it does not.  The Court can grant Shaisi's argument and assume that Shaisi "would not have committed a robbery if the people who happened to chase him were not employees of the [Food Maxx]" and that "solely because he was chased by store employees . . . his offense was a robbery rather than a petty theft."  Pet. (dkt. 1) at m-10.  Still, the uncertainty to which Shaisi objects arises from the penological scheme itself, not vagueness in the text: California simultaneously (a) allows constructive possession of

**United States District Court**
For the Northern District of California

property, see People v. Scott, 45 Cal. 4th 743, 750-58 (2009) (holding that all employees

working at a business premises "constructively" possess the employer's property by virtue of

their relationship to the employer); and (b) limits the robbery statute's application to those

instances in which the would-be thief applies force against the possessor of the taken

property, see People v. Nguyen, 24 Cal. 4th 756, 763-64 (2000) (noting that California has

rejected the Model Penal Code definition of robbery, which "include[s] the use of force or

fear against any person during the commission of a theft," (emphasis in original)).

Thus, Shaisi correctly notes that a California thief might not know the full extent of

his liability – but only because he might not know the identity of the person against whom he

applies force  (whether that person constructively possesses the property or not).  However,

one finds this uncertainty on the face of the statute.  As the Court of Appeal noted:

> A would-be thief knows that he is exposing himself to punishment for robbery if he
> uses force or fear to accomplish a taking from the owner's person or immediate
> presence.  If the person against whom he exercises force or fear turns out not to be the
> owner, or one imbued by law with the owner's status, then the defendant can count his
> lucky stars that he is not guilty of robbery.  The fact that he may not know all the
> circumstances that will ultimately determine the extent of his criminal cupability does
> not render vague the statute under which he is prosecuted.

Shaisi, 2008 WL 4561607, at *20.  Shaisi's claim fails, therefore, because (a) the statute

gives sufficiently definite warning of the proscribed conduct, including, most importantly,

the uncertainty inherent in engaging in such conduct; and (b) it does not encourage arbitrary

and discriminatory enforcement, because the uncertainty varies based on circumstances of

the victim's identity, not vague statutory text providing constitutionally insufficient guidance

to law enforcement.  See Kolender, 461 U.S. at 357.

The Court of Appeal did not unreasonably apply federal law in concluding the same.

See id. at 16-20.  This claim does not merit habeas relief.[12]

_____

[12] Shaisi also alludes in passing to a "denial of equal protection under the Fourteenth
Amendment."  Pet. (dkt. 1) at m-10.  The government claims that Shaisi did not present this claim in
his appeal to the Court of Appeal and did not, therefore, exhaust it.  Answer (dkt. 7-1) at 31 n.3.  Shaisi
responds that he exhausted the equal protection challenge by including it in his direct appeal to the
California Supreme Court.  Traverse (dkt. 12-1) at 4-6.
    Shaisi's argument misunderstands the law.  Although he stated the claim to the California
Supreme Court – presumably based on the Court of Appeal's suggestion that his misplaced vagueness
argument might actually "suggest some sort of equal protection challenge," Shaisi, 2008 WL 4561607,

**United States District Court**
For the Northern District of California

**F.    Unconstitutional Vagueness Based on Use of Force**

On the other hand, Shaisi's second vagueness claim points to an alleged ambiguity in the robbery statute's text.  Again, the statute reads: "[r]obbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  Cal. Penal Code § 211 (2011). Shaisi notes that the statute does not explicitly define <u>when</u>, in the course of an alleged robbery, the would-be thief must apply force or fear.  <u>See</u> Pet. (dkt. 1) at m-11 to m-14.  To the extent the statute applies to non-violent takings "when the element of force is delayed and is applied only to effectuate escape," Shaisi claims it is impermissibly vague. <u>Id.</u> at m-14. He argues: "[a] shoplifting could be turned into a robbery if a fleeing shoplifter pushed a store detective away in order to escape from being apprehended.  An individual would not know that mere resistance [following an initial taking] could turn a petty misdemeanor into a [robbery]." <u>Id.</u>

**1.    Analysis**

The same federal law applicable to Shaisi's previous vagueness claim applies here. <u>See</u> <u>Kolender</u>, 461 U.S. at 357.

Shaisi conceded in his direct appeal to the Court of Appeal that "longstanding state of California precedent permits a conviction for robbery when the element of force is delayed and is applied only to effectuate escape . . . ."  Lodged Exhibits, Ex. 5 at 38.  Although Shaisi did not make this point in his habeas papers, the Court finds that California has consistently

---

at *20 – he "did not fairly present his federal law claims when he raised them for the first and only time upon petitioning for discretionary review to the [California] State Supreme Court." <u>Casey v. Moore</u>, 386 F.3d 896, 917 (9th Cir. 2004) (citing <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989)); <u>cf.</u> <u>Williams v. Cavazos</u>, -- F.3d --, No. 07-56127, 2011 WL 1945744, at *6 (9th Cir. May 23, 2011) (discretionary denial of petitioner's <u>direct</u> appeal did not qualify as adjudication on the merits).

The Court notes that Shaisi's brief to the Court of Appeal did cite the Fourteenth Amendment, <u>see</u> Lodged Exhibits, Ex. 5 at 36, and obliquely suggested a violation of Shaisi's right to equal protection two pages later, <u>see</u> <u>id.</u> at 38.  The Court's decision, however, makes the exhaustion issue purely academic.  As Shaisi nowhere expands upon his equal protection challenge, the Court assumes Shaisi's claim to be that the robbery statute's alleged vagueness results in its unequal application.  But, as clarified above, the uncertainty to which Shaisi objects applies equally to all would-be robbers; it does not create variation in the statute's application, except for that variation based on differences in victims' identities.  Contrary, then, to Shaisi's presumed argument, the statute "mandates the same treatment for any person . . . who commits a particular crime." <u>See</u> <u>Alvarado v. Hill</u>, 252 F.3d 1066, 1069 (9th Cir. 2001).

**United States District Court**
For the Northern District of California

1  held robbery to constitute "a continuing offense that begins from the time of the original

2  taking until the robber reaches a place of relative safety."  People v. Estes, 147 Cal. App. 3d

3  23, 28 (1983).  Thus, on similar facts to this case, the Estes court concluded, "[i]t is sufficient

4  to support the conviction that appellant used force to prevent the guard from retaking the

5  property and to facilitate his escape."  Id.; see also People v. Gomez, 43 Cal. 4th 249, 261

6  (2008) (approving Estes, stating that "[u]nder the language of section 211, . . . the 'force or

7  fear' element of robbery can be satisfied during either the caption or the asportation phase of

8  the taking").

9      California courts have not, therefore, relied on a narrow construction of § 211 to save

10  the statute from constitutional error.  Cf. Skilling v. U.S., -- U.S. --, 130 S. Ct. 2896, 2929

11  (2010) ("It has long been our practice, however, before striking a federal statute as

12  impermissibly vague, to consider whether the prescription is amenable to a limiting

13  construction.").  Indeed, they have held, and this Court agrees, that the statute intends the

14  force or fear element to apply to the caption and asportation phases of a taking.  The relevant

15  question, then, becomes whether the statute "conveys sufficiently definite warning as to the

16  proscribed conduct when measured by common understanding and practices," so not to fail

17  the void-for-vagueness doctrine's notice and nonarbitrary, nondiscriminatory enforcement

18  prongs.  See Panther, 911 F.2d at 578.

19      The Court holds that the statute supplies such warning.  It agrees with the Court of

20  Appeal that:

21          nothing in the ordinary meaning of these words . . . would lead a would-be thief to
            suppose that he is not guilty of robbery if he initially takes the property into his hand
22          without violence, but then uses force to retain it . . . .  In ordinary usage, it might
            readily be understood that a taking, though commencing without violence, is not
23          'accomplished' until the property has been sprited away, such that any violence used
            prior to that point would make the crime a robbery.
24
    Shaisi, 2008 WL 4561607, at *17.  The Court further agrees with the Court of Appeal's
25
    consideration of Shaisi's argument that, "[a]t common law, the element of the use of force,
26
    violence, or intimidation must be applied to effectuate the taking of the property."  Pet. (dkt.
27
    1) at m-11.  Shaisi cites a handful of legal treatises and an Alabama Supreme Court decision
28
    from 1890 to this effect, see id. at m-11 to m-13, however these sources say nothing about

how "ordinary people" understand § 211.  See Kolender, 461 U.S. at 357 (". . . define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited . . .").  Again, as the Court of Appeal wrote, Shaisi's reliance on the common law "presupposes not a person of ordinary intelligence contemplating the actual words of the statute, but one who has read a criminal law hornbook and has thus formed expectations that will be unpleasantly crushed if he relies on them in using force to make good a larceny in California."  Shaisi, 2008 WL 4561607, at *17.

"The general class of offenses to which the statute is directed is plainly within its terms."  United States v. Harriss, 347 U.S. 612, 618 (1954).  The Court thus finds that the statute provides adequate notice of the proscribed conduct and does not encourage arbitrary and discriminatory enforcement.  See Kolender, 461 U.S. at 357.  The Court of Appeal did not unreasonably apply federal law in determining the same.

**IV.    CONCLUSION**

For the foregoing reasons, the Court finds that none of Shaisi's claims warrants habeas relief.  The Court, therefore, DENIES Shaisi's Petition.

**IT IS SO ORDERED.**

Dated: August 1, 2011

_____
CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE